UNITED STATES DISTRICT COURTSOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:22-cv-60123-WPD

CHRISTOPHER T. BERES
and ANDREW DELANEY,

        Plaintiffs,

v.

DAILY JOURNAL CORPORATION,

        Defendant.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court on Defendant Daily Journal Corporation's Amended[1] Motion to Dismiss for Failure to State a Claim [DE 20] (the "Motion"). The Court has carefully considered the Motion, Plaintiffs' Response [DE 25], the Reply [DE 30], and is otherwise fully advised in the premises.

**I.  BACKGROUND**

In the instant action, Plaintiff Christopher T. Beres, a Florida lawyer, and Plaintiff Andrew Delaney, one of Beres' clients, bring one count for defamation against Defendant Daily Journal Corporation based on the Daily Journal's publication of a two-part article. *See generally* Am. Compl. ("AC") [DE 5].

To provide some context for the article, Plaintiffs allege that on March 30, 2020, Toyota, its law firm, and their job agency HC2, Inc. terminated Delaney from his employment as a Thai

---

1 The Court notes that the Motion to Dismiss was amended upon Plaintiffs' Notice of Withdrawal of Docket No. 6 [DE 19], wherein Plaintiffs indicated that the Amended Complaint [DE 5] is the operative complaint, not the Corrected Amended Complaint [DE 6].

1

language translator in retaliation for a public health and safety complaint he lodged against them during the coronavirus pandemic. AC ¶ 18. Beres then sued Toyota on behalf of Delaney in Florida state courts on April 15, 2020. AC ¶ 18. HC2 then sued Delaney in the United States District Court for the Southern District of New York on April 22, 2020, seeking a temporary restraining order and preliminary injunction based on claims of breach of contract and the faithless servant doctrine. AC ¶ 18 (citing *HC2, Inc. v. Delaney*, 1:20-cv-03178 (S.D.N.Y. filed Apr. 22, 2020)) (the "SDNY Action").[2] Plaintiffs allege that in that action HC2 "never accused Beres or Delaney of stealing or selling trade secrets." AC ¶ 18. According to Plaintiffs, Judge Lewis J. Liman, the judge in the SDNY Action, denied HC2's requested relief and, in an order dated May 27, 2020, held that a letter written by Beres and sent to the chairman of Toyota "was 'a routine demand letter'" and "not an extortion." AC ¶¶ 18–19. Judge Liman also held that the information in the case "*were not trade secrets.*" AC ¶ 19 (emphasis in original).

The Amended Complaint alleges that on April 28 and April 29, 2020, the Daily Journal published a two-part article entitled *Does Covid-19 Threaten Your Trade Secrets? Yes, It Does. (Part I)*, and *Does Covid-19 Threaten Your Trade Secrets? Yes, It Does. (Part II)*. AC ¶¶ 7, 23, Ex. A, Ex. B. Plaintiffs allege that these articles defamed them. AC ¶ 23. In addition to alleging that the headlines themselves are defamatory because "the articles 'conclude' that [P]laintiffs were guilty six days after the case was filed: 'Yes, it does,'" *see* AC ¶ 23, Plaintiffs allege that the following statements contained within Part I are false and defamatory:

---

2 The Court takes judicial notice of the docket in the SDNY Action, including the complaint [DE 20-1] ("SDNY Compl."). *See* SDNY Action, [DE 1]. The court may take judicial notice of another court's docket entries and orders for the limited purpose of recognizing the filings and judicial acts they represent. *McDowell Bey v. Vega*, 588 F. App'x 923, 926–27 (11th Cir. 2014) (finding that district court properly took judicial notice of entries appearing on state court's docket sheet). Though Plaintiffs seem to suggest the SDNY complaint cannot be judicially noticed because its contents are disputed and were judicially determined to be untrue, the Court notes that it is only judicially noticing the fact that the complaint was filed and the allegations were made, not the truth of the matter asserted. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).

> Any time there is a termination of an employee, there is potential for misappropriation or loss of trade secrets. Consider the following potential scenarios:
>
> . . . .
>
> - A terminated employee cannot find new employment and decides to use the former employer's trade secrets as a source of income. *See, e.g., HC2 Inc. v. Delaney*, Case No. 1:20-cv-03178 (U.S. District Court for the Southern District of New York) (complaint alleges that a former employee of a legal staffing company tried to extort clients for $450,000 by threatening to release confidential information after they suspended a document review project due to the COVID-19 pandemic).

AC ¶ 24; Ex. A. Plaintiffs allege that "[e]very part of the first sentence" of the bulleted paragraph is false and defamatory because Delaney was not "a terminated employee [who] cannot find new employment," Delaney did not "*decide* to use the former employer's trade secrets as a source of income," and because there were no "trade secrets" in the SDNY Action. AC ¶ 24 (emphasis in original). Plaintiffs also allege that "'threat to disclose confidential information' and 'extortion' in [t]he Daily Journal is a clear reference to Beres's April 7, 2020 employment demand letter to Toyota . . ., thereby imputing these crimes to him." AC ¶ 25 (citing Ex. B). According to Plaintiffs, the content of the articles "spread like a disease including on social media" and caused substantial damage. AC ¶¶ 32, 35, 37.  Plaintiffs seek twenty million dollars ($20,000,000.00) in compensatory damages and one hundred million dollars ($100,000,000.00) in punitive damages.

Defendant now moves to dismiss with prejudice the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, the Motion [DE 20] is granted.

**II.**    **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This

pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "on the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

Although courts are directed to accept a plaintiff's allegations as true in ruling on a motion to dismiss, they are "*not bound* to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (emphasis added).

### III.   DISCUSSION

Defendant Daily Journal published two-part article entitled *Does Covid-19 Threaten Your Trade Secrets? Yes, It Does. (Part I)*, and *Does Covid-19 Threaten Your Trade Secrets? Yes, It Does. (Part II)*. *See* AC Ex. A. Based on the article, the Amended Complaint asserts a single claim against Daily Journal for Defamation (Slander and Libel). *See* AC ¶¶ 16–38. Defendant argues that Plaintiffs' claim is subject to dismissal for three reasons. First, the allegedly libelous statement, citation, and parenthetical are not "of and concerning" Beres, and the statement is not about Delaney either. Second, the statement and accompanying citation and parenthetical accurately and fairly depict the allegations in the SDNY complaint and are therefore not false or defamatory. Finally, Plaintiffs' claim is barred by the fair-report privilege.

Upon careful review of the parties' arguments and relevant authority, the Court finds there are independently sufficient grounds for dismissing the claims of each Plaintiff. First, Beres's defamation claim fails as a matter of law because nothing contained within the article—including the statement, citation, and parenthetical—are "of and concerning" Beres. The statement is not about Delaney either. Second, the only portion of the article concerning Delaney, a parenthetical and accompanying citation, contain no material falsities.

### A.   Nothing Contained Within the Article is "Of and Concerning" Beres, and the Statement is not "Of and Concerning" Delaney

Defendants argue that nothing in the statement, citation, or parenthetical are about Beres. Though Defendant concedes the parenthetical is about Delaney, [DE 20] at 8, Defendant asserts

5

that the statement concerning a hypothetical terminated employee is not about Delaney either.

Under Florida law, the elements of a cause of action for defamation are: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Additionally, a cause of action for defamation requires the defamatory statement or implication be "of and concerning" the plaintiff. *See Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997). In Florida, there is no strict requirement that an allegedly defamed person be named in a publication for the statement to be actionable. *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th DCA 1973). However, it is well established that "the communication as a whole [must] contain[] sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Id.* (citing *O'Neal v. Trib. Co.*, 176 So. 2d 535, 548 (Fla. 2d DCA 1965). The relevant inquiry is whether "the average person upon reading [the] statements could reasonably have concluded that the plaintiff [] was implicated[.]" *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982), *aff'd*, 458 So. 2d 239 (Fla. 1984).

Here, the challenged article is a lawyer-submitted practice piece addressing "how trade secrets are threatened [by the COVID-19 pandemic] and potential steps that may reduce the threat to trade secrets." AC Ex. A. The challenged statement concerns a "potential scenario[]" whereby a "terminated employee cannot find new employment and decides to use the former employer's trade secrets as a source of income." AC ¶ 24. The accompanying parenthetical reads "complaint alleges that a former employee of a legal staffing company tried to extort clients for $450,000 by threatening to release confidential information after they suspended a document

review project due to the COVID-19 pandemic." AC ¶ 24. Plaintiffs argue that because Beres "was the lawyer who took the claimed actions in the parenthetical," the parenthetical is clearly about Beres. [DE 25] at ¶ 18. Specifically, Plaintiffs allege that "[t]he supposed 'threat to disclose confidential information' and 'extortion' in [t]he Daily Journal is a clear reference to Beres's April 7, 2020 employment demand letter[,] . . . thereby imputing those crimes to him." AC ¶ 25. Plaintiffs further argue that the accompanying statement regarding a terminated employee is about Delaney because of the signal "[s]ee, e.g." preceding the case citation. The Court disagrees.

 First, the only portion of the article challenged by Plaintiffs is a bulleted paragraph following an invitation for the reader to "[c]onsider the following potential scenarios." AC Ex. A. In other words, the statement itself presents only a hypothetical "terminated employee" in a "potential scenario." When read in context, this statement cannot reasonably be regarded as being about Delaney, let alone Beres.

  Further, the suggestion that the use of "[s]ee, e.g." means that the preceding proposition is about Delaney is not only an unreasonable reading, but is entirely inconsistent with the meaning and purpose of this introductory signal. "A signal is a shorthand message to the reader about the relationship between a proposition and the source or authority cited for that proposition." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION B1.2, at 4 (Columbia Law Review Ass'n et al. eds., 21st ed. 2020) (emphasis omitted). According to the Bluebook, the "e.g." signal indicates that the "[c]ited authority states the proposition" but that "other authorities also state the proposition." *Id.* at R. 1.2(a). The "see" signal "is used instead of '[no signal]' when the proposition is not directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports." *Id.*

Therefore when combined, "see, e.g., denotes that numerous sources *indirectly* support the proposition," not that the case is a literal example of what preceded it.[3] The Writing Center at Georgetown University Law Center, *Bluebook Signals Explained* at 3, https://www.law.georgetown.edu/wp-content/uploads/2019/08/BLUEBOOK-SIGNALS-EXPLAINED.pdf (2019) (emphasis added).

Second, the parenthetical merely references a "former employee"—which Defendant concedes is Delaney—and makes no reference to Beres. The parenthetical, and the entire article for that matter, do not even mention Beres. The fact that Beres is the one that purportedly sent the letter that supposedly threatened to disclose confidential information does not transform a statement about a hypothetical terminated employee and a parenthetical about a complaint's allegations into statements about Beres. Nor does the fact that the SDNY complaint references a lawyer who assisted Delaney mean that the parenthetical itself is about Beres. Courts are required to analyze defamation claims through the objective lens of the average reasonable reader, not the subjective interpretations of actual readers.[4] *Miami Herald Pub. Co.*, 423 So. 2d at 389. Nothing in the statement, citation, parenthetical, or article as a whole, are "of and concerning" Beres, and no reasonable reader could have interpreted them as such. On this basis, Beres's defamation claim fails as a matter of law.[5] *See Byrd v. Hustler Magazine,* 433 So. 2d 593, 595 (Fla. 4th DCA 1983).

---

[3] This is particularly true here, where the article prefaces the bulleted paragraph with language indicating that what follows is a "potential scenario."

[4] For the same reasons, a reasonable reader would not understand the article's headlines—"Does COVID-19 threaten your trade secrets? (Yes, it does)"—to be about Beres or Delaney either.

[5] Delaney's claim, however, does not fail on this basis as Defendant concedes the parenthetical and accompanying citation are about Delaney.

### B. The Statement is Not Defamatory, and the Parenthetical is Not Substantially and Materially False

Defendant asserts that the statement and accompanying citation and parenthetical accurately and fairly depict the allegations in the SDNY complaint and are therefore not false or defamatory.

"A false statement of fact is the *sine qua non* for recovery in a defamation action." *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir.1984) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983)) (internal quotation marks omitted). Falsity exists only if "the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban American Nat'l Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999). Under Florida law, an alleged false statement does not have to be "perfectly accurate" if the "gist" or "sting" of the statement is true. *See id.* at 706. "The gist of any statement within a publication or broadcast is found only by reference to the entire context." *Levan v. Capital Cities/ABC, Inc.,* 190 F.3d 1230, 1240 (11th Cir. 1999). Indeed, courts should "construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement." *Turner v. Wells*, 879 F.3d 1254, 1263 (11th Cir. 2018).

In the Amended Complaint, Plaintiffs allege that Defendant's article falsely concludes that Plaintiffs were guilty of theft of trade secrets. AC ¶ 23. Plaintiffs argue the article is false and defamatory because Delaney was not "a terminated employee [who] cannot find new employment," Delaney did not "*decide* to use the former employer's trade secrets as a source of income," and because there were no "trade secrets" in the SDNY Action. AC ¶ 24 (emphasis in original). Because the Court has concluded the statement is not "of and concerning" Beres or Delaney as it is merely a hypothetical example that is only indirectly supported by the case

9

citation, the statement cannot defame them as a matter of law. *See supra*; *Byrd,* 433 So. 2d at 595. The Court now turns to the citation and parenthetical.

A comparison of the allegations in the SDNY complaint with the parenthetical reveal that the parenthetical is not substantially and materially false. Some of the allegations upon which Defendant relied in making the challenged parenthetical were laid out in the SDNY complaint:

- Plaintiff HC2 is a "legal staffing company." SDNY Compl. ¶¶ 1, 13.

- Delaney "was selected" as a "contract attorney[]" to "work on a temporary document review project" for a "Corporate Client," which "entailed the review of confidential documents, attorney-client privileged materials, and attorney work-product." *Id.* ¶ 2.

- The project was "suspended" because of the COVID-19 pandemic. *Id.* ¶¶ 3, 20–21.

- Delaney "emailed senior management . . . alleging retaliatory termination, threatening litigation, and demanding payment." SDNY Compl. ¶ 5; *see also id.* ¶¶ 23–25

- "Delaney then engaged counsel to demand $450,000 from the Corporate Client. Delaney's counsel ceased representing him a few days after making the entirely unjustified demand. Delaney immediately engaged new counsel to write a letter to the Corporate Client's [CEO] and its Board of Directors alleging that Delaney had been wrongfully terminated, accusing Corporate Client of all matter of unsubstantiated offenses, and reciting information belonging to the Corporate Client which is confidential and subject to the attorney-client privilege. In the letter, emailed on April 13, Delaney's lawyer threatened to commence legal action and publicly disclose such confidential and privileged information about the Corporate Client that Delaney had obtained during the [p]roject if Delaney's demand was not met by the next day." SDNY Compl. ¶ 6; *see also id.* ¶¶ 29, 31.

- "Delaney's lawyer signed and filed [a] State Court Complaint," who HC2 alleged is the same lawyer "who was assisting Delaney in carrying out his scheme to *extort* a significant payment from Corporate Client[.]" SDNY Compl. ¶¶ 30–31 (emphasis added).

The parenthetical states "complaint alleges that a former employee of a legal staffing company tried to extort clients for $450,000 by threatening to release confidential information after they suspended a document review project due to the COVID-19 pandemic." AC Ex. A (emphasis

10

added); *see also* AC ¶ 24. Upon careful review, the Court finds that this parenthetical does not contain any substantial and material falsities and otherwise accurately describes the allegations in the SDNY complaint.

Plaintiffs challenge the accuracy and falsity of the parenthetical on two grounds. First, Plaintiffs argue the parenthetical is not true because the plaintiff in the SDNY Action sued Delaney in a civil action for breach of contract and faithless servant. Plaintiffs appear to argue that because extortion is a crime in New York, the use of the word "extort" is false or inaccurate. However, Plaintiffs ignore the allegations of the SDNY complaint itself, which detail a purported "scheme to extort a significant payment from" a corporate client. *See, e.g.*, AC ¶ 31. Moreover, the article need not be "perfectly accurate" if the "gist" of the statement is true. *Smith*, 731 So. 2d at 706–07. That extortion is not actually charged in the SDNY Action does render the parenthetical false or defamatory.

Second, Plaintiffs appear to argue the parenthetical (and statement) are false because Judge Liman in the SDNY Action determined them to be untrue. *See* [DE 25] at ¶ 36 ("But in his ruling, Judge Liman already found that there were no trade secrets in this case and that the Beres letter was 'a routine demand letter and not an extortion.'"). The introductory phrase "complaint alleges" makes clear that the parenthetical merely describes the complaint's allegations, not that it vouches for their veracity. Therefore, whether the allegations in the SDNY Action were judicially determined to be untrue is not relevant to whether Defendant's parenthetical accurately and fairly describes the allegations.

Accordingly, because the parenthetical does not contain any substantial and material falsities, it cannot be the basis for a defamation claim under Florida law.[6]

---

6 Plaintiffs also assert in a conclusory fashion that the entirety of the article is libelous "because it is about the theft of trade secrets," *see* [DE 25] ¶ 7, but otherwise fails to elaborate. It is axiomatic that arguments not supported and

### C. Dismissal with Prejudice

Rule 15 says that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Despite this generally permissive approach, a district court need not grant leave to amend where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed"; (2) "allowing amendment would cause undue prejudice to the opposing party"; or (3) the "*amendment would be futile*." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (emphasis added). Where the court finds that "a communication could not possibly have a defamatory or harmful effect, the court is justified in . . . dismissing the complaint for failure to state a cause of action." *Byrd,* 433 So. 2d at 595. The bases for dismissal addressed by the Court cannot be cured by amending the complaint. Amendment would be futile, so this action is dismissed with prejudice.

### IV. <u>CONCLUSION</u>

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [DE 20] is hereby **GRANTED**.

2. Plaintiffs' Amended Complaint [DE 5] is **DISMISSED WITH PREJUDICE**.

3. The Clerk is **DIRECTED** to **CLOSE** this case and **DENY AS MOOT** any pending motions.

---

properly developed are deemed waived. As this Court has stated, "'the onus is upon the parties to formulate arguments.'" *Hewlett-Packard Co. v. CP Transp., LLC*, 2012 WL 4795766, *2 (S.D. Fla. Oct. 9, 2012) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)). "When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased." *Hewlett-Packard Co.*, at *2. Thus, "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.'" *Id*. (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)); *see also N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citing *Continental Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 7th day of March, 2022.

*/s/ William P. Dimitrouleas*
WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:
Counsel of Record